Irene Yang (CSB No. 245464)
SIDLEY AUSTIN LLP
101 California Street, Suite 3500
San Francisco, California 94111
Telephone: (415) 772-1200
irene.yang@sidley.com

*Attorneys for Plaintiff*
*Baxter Corporation Englewood*

[additional counsel listed on signature page]

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

BAXTER CORPORATION ENGLEWOOD,

Plaintiff,

v.

BECTON, DICKINSON AND COMPANY,

Defendant.

Case No. '26CV4562 TWR VET

**COMPLAINT FOR PATENT INFRINGEMENT**

**DEMAND FOR JURY TRIAL**

Plaintiff Baxter Corporation Englewood ("Baxter") files this complaint for patent infringement against Becton, Dickinson and Company ("BD"), seeking damages and other relief for patent infringement, alleging as follows:

**NATURE OF THE ACTION**

1. This is a civil action arising under the patent laws of the United States, 35 U.S.C. § 1 et seq., including specifically 35 U.S.C. § 271, seeking relief arising out of BD's infringement of U.S. Patent No. 10,045,912 (the "'912 Patent"); U.S. Patent No. 10,347,374 (the "'374 Patent"); U.S. Patent No. 11,620,803 (the "'803 Patent"); and U.S. Patent No. 12,045,757 (the "'757 Patent") (collectively, the "Asserted Patents").

**THE PARTIES**

2. Baxter Corporation Englewood is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 9540 South Maroon Circle, Suite 400, Englewood, Colorado 80112.

3. According to its Form 10-K, BD is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business at 1 Becton Drive, Franklin Lakes, New Jersey 07417-1880.

4. According to its website and FDA records, BD has a regular and established place of business and active FDA establishment registration at 3750 Torrey View Court, San Diego, CA 92130.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the claims herein arise under the patent laws of the United States, 35 U.S.C. § 1 et seq., including 35 U.S.C. § 271.

6. This Court has personal jurisdiction over BD because, as described in more detail below, BD has committed and continues to commit acts of patent infringement giving rise to this action in this Judicial District.

7. This Court has personal jurisdiction over BD because BD has a regular and established place of business in San Diego, California, which is in this Judicial District.

8. This Court has personal jurisdiction over BD because BD has harmed and continues to harm Baxter in this Judicial District by, among other things, making, using, offering for sale, and selling infringing products therein, and thereby has established minimum contacts such that the exercise of personal jurisdiction over BD does not offend traditional notions of fair play and substantial justice.

9. Venue is proper in this Judicial District under 28 U.S.C. § 1400(b) because BD, through its facility in San Diego, California, has a regular and established place of business therein.

10. BD has admitted that it maintained a regular and established place of business in this Judicial District on September 26, 2018, in *Baxter Healthcare Corporation et al. v. Becton, Dickinson and Co.*, 3:17-cv-02186, Answer at 5 (S.D. Cal. September 26, 2018) [ECF Docket No. 38]. *See also Baxter Healthcare Corporation et al. v. Becton, Dickinson and Co.*, 3:17-cv-02186, Complaint at 1 (S.D. Cal. October 26, 2017) [ECF Docket No. 1].

11. BD has also committed and continues to commit acts of infringement in this Judicial District by making, using, offering for sale, and selling the BD Pyxis IV Prep (the "Pyxis IV Prep"), the BD Pyxis PharmacyKeeper (the "Pyxis PharmacyKeeper"), and MedKeeper (collectively, the "Accused Systems").

## **THE PATENTS-IN-SUIT**

12. Baxter is the owner by assignment of the '912 Patent. A true and correct copy of the '912 Patent is attached as Ex. 2.

13. Baxter is the owner by assignment of the '374 Patent. A true and correct copy of the '374 Patent is attached as Ex. 3.

14. Baxter is the owner by assignment of the '803 Patent. A true and correct copy of the '803 Patent is attached as Ex. 4.

15. Baxter is the owner by assignment of the ’757 Patent. A true and correct copy of the ’757 Patent is attached as Ex. 5.

16. Baxter is the assignee of the entire right, title, and interest in numerous United States patents, including the ’912 Patent, ’374 Patent, ’803 Patent, and ’757 Patent.

17. The ’912 Patent is titled “Work Station for Medical Dose Preparation System” and was duly and legally issued on August 14, 2018, and is assigned to Baxter.

18. The ’912 Patent claims, among other things, a work station.

19. For example, the ’912 Patent claims a novel workstation having a base and a support platform that at least partially defines a medication-preparation staging region. The support platform has an outside support surface with physical grooves adapted to support at least a portion of a medication receptacle. A first portion of the grooves extends in a first direction corresponding to the width of the support surface, while a second portion extends across the first portion in a second direction corresponding to the length of the support surface. The claimed workstation further includes an imaging device physically supported relative to the base, with an imaging field encompassing at least part of the medication-preparation staging region. *See, e.g.*, ’912 Patent, claims 1, 27.

20. The specification further explains that “a support platform may be provided that is removably disposable relative to the base” and that its support surface may define “a plurality of medication receptacle engagement features.” ’912 Patent, 6:36-46. The specification further describes engagement features extending in different directions across the support surface and, “[a]s such, the syringe may be constrained in at least two degrees of freedom” to reduce unintended sliding or other movement from the support platform. ’912 Patent, 6:63-7:10, 25:7-55, Figs. 11-14.

21. As another example, the ’912 Patent claims novel systems including a scale configured to output the weight of a medication receptacle supported on the

grooved platform, a processor in operative communication with the scale, and memory in operative communication with the processor. The processor compares the measured weight with an anticipated weight, calculates a deviation, stores the measured and anticipated weights in memory as metadata associated with the medication dose order, compares the deviation with a threshold, and provides an alert when the deviation exceeds that threshold. *See, e.g.*, ’912 Patent, claim 27.

22. The specification further explains that the platform base “may include a scale such that an item disposed on the support platform . . . may be weighed,” and that the measured weight may be captured “substantially simultaneously” with a medical-dose preparation image. ’912 Patent, 24:26-33. The processor may then perform a gravimetric analysis by comparing the measured weight with an anticipated weight, storing both values, calculating any deviation, and providing an alarm if the deviation exceeds a threshold. ’912 Patent, 24:33-50.

23. The ’374 Patent is titled “Medication Preparation System” and was duly and legally issued on July 9, 2019, and is assigned to Baxter.

24. The ’374 Patent claims, among other things, a system for preparing patient-specific compounded medication doses.

25. The ’374 Patent specification explains some of the advantages of the claimed invention.

26. For example, the ’374 Patent claims a novel medication compounding workstation configured to require, at each step, verification of a source medication container suitable for preparing a patient-specific compounded medication dose, and if the verification fails, displaying an error in real time, requiring the pharmacy operator to repeat the failed step, and preventing the operator from providing verification for the next step. *See, e.g.*, ’374 Patent, claims 16, 21.

27. For example, the specification explains that “if during any step, a verification error arises and there is a question as to whether the step was properly performed, the dose order processing is prevented from continuing to the next step

until the step is verified as being properly performed or until the dose order is flagged as being not completed due to an error." '374 Patent, 15:58-65.

28. As another example, the '374 Patent claims a medication compounding workstation including a communications interface configured to receive an electronic medication dose order for a patient-specific compounded medication dose over a network, as well as a scanner configured to receive medication information scanned from at least one source medication container, an interactive graphical user interface, and a digital camera to capture the preparation of the patient-specific compounded medication dose. *See, e.g.*, '374 Patent, claim 16.

29. Consistent with that architecture, the specification describes workstations equipped with "a touch screen, one or more bar code scanners, label printers and a camera," together with additional hardware such as a scale and mixing station. '374 Patent, 29:14-20. As the specification explains, the camera captures images of dose-preparation activities for later inspection, while the touch screen and scanner receive operator and product inputs during preparation. '374 Patent, 29:30-40; Figs. 3, 9-10.

30. The '374 Patent also claims, for example, a novel medication compounding system that takes measurements using at least one of a scale, a hydrometer, and a spectrometer, and verification of completion of a step in the compounding protocol is based on that measurement being within an acceptable range, and the medication compounding workstation is configured to prevent the pharmacy operator from completing the protocol if the measurement is outside the range. *See, e.g.*, '374 Patent, claims 12-14.

31. The specification further describes these "tools and equipment" that are used to facilitate the verification process, including "barcode scanners, digital cameras, scales, hydrometers, spectrometers, and other tools that can be used to verify the properties of a substance. . . . Failure to input a measurement within an acceptable range can result in the system automatically rejecting the preparation.

Furthermore, to prevent operator fraud, the system can prompt the operator to place the preparation on a scale, or within another instrument, that automates the measurement." '374 Patent, 14:66-15:14.

32. The '803 Patent is titled "Work Station for Medical Dose Preparation" and was duly and legally issued on April 4, 2023, and is assigned to Baxter.

33. The '803 Patent claims, among other things, a work station apparatus for use in a system for medical dose preparation management.

34. For example, the '803 Patent claims novel systems including a processor configured to receive, over a network from a medical dose preparation management system, a dose-order workflow specifying a sequence of steps for preparing a medical dose. In response to an individual step, the processor causes a display to present an instruction directing the operator to place a medication-preparation object on the workstation's staging region. After placement, the processor records digital image data of the object using the workstation's imaging device and records weight data using the workstation's integrated scale, displays and stores those data for verification, and then proceeds to the next step in the sequence. *See, e.g.*, '803 Patent, claims 1, 12.

35. Consistent with that architecture, the specification describes that the medical dose preparation management system routes dose orders to workstations and that, "[a]t the work station 40, a work flow corresponding to the preparation of the medical dose order may be displayed." The workflow is specific to the dose being prepared and provides the technician with a sequence of preparation steps. '803 Patent, 13:1-12, 13:34-45, Fig. 1.

36. As another example, the '803 Patent claims novel systems where, after completion of the dose-order workflow, the processor transmits both the digital image data and the weight data to the medical dose preparation management system for verification, thereby enabling the prepared medical dose to be dispensed. *See, e.g.*, '803 Patent, claim 12.

37. The specification similarly describes making the preparation information available to a pharmacist over a network, allowing the pharmacist to remotely inspect the preparation images and other dose-order data and verify that the correct medication was prepared in the correct manner and amounts. Once verified, the management system may dispense the dose order. ’803 Patent, 13:57-14:22, Fig. 1.

38. As another example, the ’803 Patent claims a novel physical workstation that includes a platform base incorporating a scale and defining a medication-preparation staging region, a housing, a support member engaged with both the housing and the platform base so as to suspend the housing over the staging region; an imaging device located at least partially within the housing and having an imaging field encompassing at least part of the staging region, memory, a processor in operative communication with the memory, and a display in operative communication with the processor. *See, e.g.*, ’803 Patent, claims 1, 12.

39. The specification describes this novel mechanical architecture in detail. It explains that “the work station may generally include an imaging device (e.g., digital camera) supported relative to a medication preparation staging region,” and that “a support member may extend between the base and the housing for supportably disposing the imaging device relative to the base.” ’803 Patent, 3:55-60, 5:30-33. The specification further provides that “the housing 210 and the transparent shield 216 may collectively define an enclosed volume 218 . . . in which the camera 212 may be disposed,” and that the housing contains a light-source board with multiple light sources arranged so that their distribution “may facilitate the relatively uniform distribution of light.” ’803 Patent, 17:12-18, 17:29-18:3; Figs. 3-5. The specification also explains that “a scale may be provided that is in operative communication with the processor,” allowing “the weight of the medication receptacle [to] be recorded by the processor from the scale at substantially the same time that the medical dose preparation image is captured.” ’803 Patent, 7:55-8:7. The processor may then

"compare the measured weight of the medication receptacle to an anticipated weight," calculate a deviation, and provide an alert "when the deviation exceeds a threshold deviation." '803 Patent, 8:13-29; *see also* 24:39-61.

40. The '757 Patent is titled "Work Station for Medical Dose Preparation" and was duly and legally issued on July 23, 2024, and is assigned to Baxter.

41. The '757 Patent claims, among other things, a system for preparation and management of medical doses.

42. For example, the '757 Patent claims a novel medical-dose preparation workstation that receives an ordered preparation workflow over a network, guides the operator through a specified sequence of preparation steps, and uses integrated imaging, weighing, memory, and processing components to generate verification data concerning the dose being prepared. For example, this novel medical-dose preparation workstation includes a processor configured to receive, from a medical dose preparation management system via a network, a dose-order workflow specifying a sequence of steps for preparing a medical dose. In response to a step in that sequence, the processor causes a display to show an instruction directing the operator to place a medication-preparation object in the workstation's staging region. After the object is placed, the processor causes the imaging device to record digital image data, receives weight data from the workstation's scale, displays the image and weight data, stores both in memory for verification, and proceeds to the next step in the ordered sequence. *See, e.g.*, '757 Patent, claims 2, 12.

43. Consistent with this claimed workflow, the specification explains that the medical dose preparation management system routes dose orders to an appropriate workstation and that "the routing 56 may include communications over a network to a remote work station 40." '757 Patent, 13:1-17. At the workstation, "a work flow that is specific to the medical dose order currently being prepared" is presented to the technician, and "the technician may follow a sequence of steps to

prepare the medical dose based on the work flow displayed 58 that relates to the dose order." '757 Patent, 13:38-47; Fig. 1.

44. As another example, the '757 Patent claims novel systems with a platform base incorporating a scale and defining a medication-preparation staging region, a housing suspended over that region, a support member engaged with the housing and platform base; an imaging device located at least partially within the housing, at least one light source disposed within the housing and directed toward the staging region, memory, a processor in operative communication with the memory, and a display. *See, e.g.*, '757 Patent, claim 2; *see also* claim 12.

45. The specification explains that "the work station may generally include an imaging device (e.g., digital camera) supported relative to a medication preparation staging region," with the staging region at least partially defined by a base that supports a medication receptacle. '757 Patent, 4:1-15. It further provides that "a support member may extend between the base and the housing for supportably disposing the imaging device relative to the base," and that the support member may position the imaging device in multiple physical positions relative to the staging region. '757 Patent, 5:34-55. The specification also states that "at least one light source (e.g., one or more LEDs) may be disposed in the housing" and may emit light toward the medication-preparation staging region. '757 Patent, 4:49-55.

## BAXTER'S COMPOUNDING TECHNOLOGY

46. Baxter is a leading developer and manufacturer of medical products, including pharmacy automation, software and services; sterile IV solutions; infusion systems and devices; parenteral nutrition; biosurgery products and anesthetics; and perioperative care.

47. Baxter developed the DoseEdge Pharmacy Workflow Manager ("DoseEdge") to prevent harmful medication errors associated with injectable medications.

48. DoseEdge is an integrated system for managing IV and oral dose preparation activities. DoseEdge interfaces with the existing Pharmacy Information System to automate the process of routing, preparing, inspecting, tracking and reporting on IV and oral liquid doses.

49. DoseEdge includes barcode scanners, cameras, and gravimetric devices to automate the process of routing, inspecting, tracking, and reporting on IV or oral liquid medication doses in full support of ISMP Best Practices.

50. DoseEdge was introduced to the market in 2008. Since its inception, DoseEdge has processed at least 100 million doses and identified more than 4.7 million potential errors.

## BD'S INFRINGING PRODUCTS

51. BD is a global medical technology company that manufactures and sells medical supplies, drug delivery systems, laboratory equipment, software solutions, and diagnostic systems.

52. BD has a product line for connected medication and supply management.

53. BD sells and offers for sale the Pyxis IV Prep (previously known as the BD Cato workflow solutions), described as a technology assisted workflow and compliance management solution.

54. BD claims that the Pyxis IV Prep is a customizable compounding workflow and regulatory compliance solution. Ex. 6.

55. BD claims that Pyxis IV Prep standardizes compounding processes such as order review, medication picking, and dose preparation to improve medication safety and pharmacy workflow.

56. Pyxis IV Prep includes gravimetric verification, barcode automation, electronic documentation, and health information technology interoperability.

57. Pyxis IV Prep includes a workstation for preparing a medical dose that has a base.



(https://www.bd.com/en-no/products-and-solutions/solutions/medication-management-solutions)

58. Pyxis IV Prep includes a workstation for preparing a medical dose that has an imaging device.



(https://www.bd.com/en-us/products-and-solutions/products/product-page.356891-01)

59. Pyxis IV Prep includes a workstation for preparing a medical dose that has a scale. The scale used with the Pyxis IV Prep is manufactured by Mettler Toledo.

> **Highlighted Features:**
>
> - Optimize compounding workflows and streamline processes with guided automated workflow progression and remote pharmacist's, verification
> - Get real-time dose preparation error notifications via gravimetric analysis and workflow hard stops
> - Help reduce waste with detailed clean-room inventory management including automated NDC, lot, expiration and BUD capture

(https://www.bd.com/en-us/products-and-solutions/products/product-page.356891-01#overview)

60. The Pyxis IV Prep imaging device is connected to a processor that captures the image of a medical dose being prepared.

61. BD sells and offers for sale the Pyxis PharmacyKeeper, described as a suite of scalable and customizable web and mobile-based applications for compounding pharmacies. Ex. 12.

62. BD claims that the Pyxis PharmacyKeeper is a customizable, cloud-based software for guided compounding workflow. Ex. 12.

63. Upon information and belief, Pyxis PharmacyKeeper was previously part of the "MedKeeper" brand of cloud-based pharmacy management applications.

64. According to BD's public press releases, MedKeeper was acquired by BD on July 28, 2022.

65. BD's knowledge of the Asserted Patents dates back to at least March 11, 2020, when Baxter's counsel sent a letter to BD's Chief Counsel for Intellectual Property identifying the '912 Patent and the '374 Patent. The letter also identified exemplary bases for Pyxis' infringement of those patents, as well as certain design patents. Ex. 1. The '912 Patent is a parent of the '757 and '803 Patents.

66. BD did not deny infringement in response to Baxter's March 11, 2020 letter.

67. On November 24, 2020, BD filed U.S. Patent Application No. 17/102,777 (the "'777 Application"), which was granted as U.S. Patent No. 11,568,537.

68. The '777 Application is directed to the functionality of the Accused Systems.

69. During the prosecution of the '777 Application, BD submitted an IDS citing U.S. Patent Pub. No. 2015/0272320 (the "'320 Publication"). Ex. 7 at 21.

70. The '320 Publication is related to the '912 Patent and the '803 Patent.

## **FIRST CAUSE OF ACTION**

### **(Infringement of the '912 Patent)**

71. Baxter realleges and incorporates by reference the foregoing paragraphs 1 to 70.

72. BD has engaged in the commercial manufacture, use, offer for sale, or sale of the Accused Systems in the United States and/or the importation of the Accused Systems into the United States. Under 35 U.S.C. § 271, any one of these acts constitutes direct and indirect infringement, either literally or under the doctrine of equivalents, of one or more claims of the '912 Patent.

73. BD infringes the '912 Patent by making, using, offering to sell, selling, and/or importing the Accused Systems in or into the United States and by actively inducing and contributing to infringement by others, in violation of 35 U.S.C. § 271 (a)-(c) and/or (f). As set forth in the attached non-limiting Claim Chart, BD infringes at least Claims 1 and 27 of the '912 Patent, either literally or under the doctrine of equivalents. Ex. 8.

74. BD also has induced infringement, and continues to induce infringement, of one or more claims of the '912 Patent, including Claims 1 and 27. BD knowingly and intentionally induces third parties to infringe the '912 Patent, including health care providers, by selling or otherwise supplying the Accused Systems with the knowledge and intent that third parties will use the Accused

Systems to infringe the ’912 Patent. BD knowingly and intentionally provides third parties with instructions on how to use the Accused Systems in a way that infringes the ’912 Patent. *See* Ex. 8.

75. For example, BD promotes the Accused Systems as supporting medication safety and accuracy, standardizing and streamlining compounding workflows, enabling remote pharmacist verification, and providing real-time notifications when dose preparations fall outside institutional tolerances. *See* https://www.bd.com/en-us/products-and-solutions/products/product-page.356891-01#overview; https://www.bd.com/content/dam/bd-assets/na/medication-management-solutions/documents/brochure/DI_BD-Pyxis-IV-Prep-Medication-Workflow-Solutions_BR_EN1.pdf.

76. Furthermore, BD’s promotional materials specifically instruct users to employ the Accused Systems to “leverage gravimetric workflows with . . . photo capture, workflow-integrated hard stops and a scale to verify accurate weight.” *See* https://www.bd.com/content/dam/bd-assets/na/medication-management-solutions/documents/pharmacykeeper/pk_gravimetrics_flyer_2024.pdf.

77. BD’s public demonstration video also shows the Accused Systems being used to manage dose preparation, including medication receptacles being placed on the medication-preparation staging region, images of those receptacles being captured and displayed, and weight information being measured and displayed. The video further shows the Accused Systems comparing the measured amount to the prescribed amount and providing an alert or corrective instruction when the measured amount deviates from the prescribed amount. *See* https://players.brightcove.net/pages/v1/index.html?accountId=81909694001&playerId=ByOoMeSD&videoId=4385052097001&autoplay=true.

78. As another example, once registered, the public is able to access BD’s Learning Academy, which purports to provide various courses relating to the Accused Systems, including a “Gravimetric Setup and Preparation Workflow” job

aid and Pyxis IV Prep courses for Pharmacy Users. *See, e.g.*, https://academy.bd.com/en-us/course/VuKX_M6tGXM1/BD-Pyxis-IV-Prep-v2-44-Job-Aids; https://academy.bd.com/en-us/course/vxodRC0vVKo1/Pharmacy-user-BD-Pyxis-IV-Prep-v2-50-course.

79. BD also has contributed and will contribute to the infringement by third parties of one or more claims of the ’912 Patent by making, using, offering to sell, selling, and/or importing the Accused Systems in or into the United States, knowing that the Accused Systems are especially made or adapted to infringe the ’912 Patent and knowing that the Accused Systems are not a staple of commerce suitable for non-infringing use.

80. For example, the components supplied by BD include the specialized base and housing or support platform that define the medication-preparation staging region, the imaging device positioned to capture that region, and the scale that conducts the measurement. Each of these components provided by BD is an essential part of the claimed workstation and is configured to operate with the other components (including special-purpose software and hardware components) as an integrated dose preparation system. These components supplied by BD would not have any use absent such communication with a customer-supplied computer.

81. BD has engaged in the foregoing conduct with respect to the patented invention in the United States without authority from Baxter and during the term of the ’912 Patent.

82. At least as a result of the letter that Baxter’s counsel sent to BD’s Chief Counsel for Intellectual Property on March 11, 2020 identifying the ’912 Patent, BD has had knowledge of the ’912 Patent and BD’s infringement thereof. Ex. 1. Nevertheless, BD has continued to make, use, sell, import, and/or offer to sell the Accused Systems in the United States.

83. BD has thus willfully infringed and continues to willfully infringe the ’912 Patent by continuing to make, use, import, offer to sell, and/or sell the Accused

Systems in the United States after having knowledge of the ’912 Patent and knowledge that the Accused Systems infringe at least Claim 1 of the ’912 Patent.

84. Thus, BD is liable to Baxter in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

85. This case is exceptional under 35 U.S.C. § 285, including due to BD’s willful infringement of the ’912 Patent.

86. As a result of the acts of infringement by BD, Baxter has suffered and/or will continue to suffer substantial damages in an amount to be proven at trial.

## **SECOND CAUSE OF ACTION**

## **(Infringement of the ’374 Patent)**

87. Baxter realleges and incorporates by reference the foregoing paragraphs 1 to 86.

88. BD has engaged in the commercial manufacture, use, offer for sale, or sale of the Accused Systems, including Pyxis, MedKeeper, and PharmacyKeeper hardware and software, in the United States and/or the importation of the Accused Systems into the United States. Under 35 U.S.C. § 271, any one of these acts constitute direct and indirect infringement, either literally or under the doctrine of equivalents, of one or more claims of the ’374 Patent.

89. BD infringes the ’374 Patent by making, using, offering to sell, selling, and/or importing the Accused Systems, including Pyxis, MedKeeper, and PharmacyKeeper hardware and software, in or into the United States and by actively inducing and contributing to infringement by others, in violation of 35 U.S.C. § 271 (a)-(c) and/or (f). As set forth in the attached non-limiting Claim Chart, BD infringes at least Claims 12-14, 16, and 21 of the ’374 Patent, either literally or under the doctrine of equivalents. Ex. 9.

90. BD also has induced infringement, and continues to induce infringement, of one or more claims of the ’374 Patent, including Claims 12-14, 16,

and 21. BD knowingly and intentionally induces third parties to infringe the ’374 Patent, including health care providers, by selling or otherwise supplying the Accused Systems with the knowledge and intent that third parties will use the Accused Systems to infringe the ’374 Patent. BD knowingly and intentionally provides third parties with instructions on how to use the Accused Systems in a way that infringes the ’374 Patent. *See* Ex. 9.

91. For example, BD promotes the Accused Systems as providing patient-specific compounding workflows, guided workflow progression, automatic photo documentation, gravimetric analysis, remote pharmacist verification, and real-time error notifications and hard stops. *See, e.g.*, https://www.bd.com/en-us/products-and-solutions/products/product-page.356891-01#overview; https://www.bd.com/en-us/products-and-solutions/solutions/medication-management-solutions/compounding-workflow-solution.

92. Furthermore, BD instructs users to operate the Accused Systems using “visual documentation hardware (VDH) [that] automatically takes pictures of each step of the compounding process, which can be used for remote verification and documentation,” “step-by-step on-screen instructions and dosage checks by an electronic scale,” and “preparation processes and the planning and prescribing of medications [that] are automatically documented.” *See* https://www.bd.com/en-no/products-and-solutions/solutions/bd-cato-medication-workflow-solutions/bd-cato#accordion-b3fc4cd649-item-c889e5d7a0.

93. BD’s public demonstration video also shows the Accused Systems displaying patient-specific dose orders and preparation protocols, directing the operator through preparation steps, capturing digital images, receiving and displaying weight measurements from the scale, determining whether the measurements are within an acceptable range, and reporting on the preparation of the patient-specific doses. *See*

https://players.brightcove.net/pages/v1/index.html?accountId=81909694001&playerId=ByOoMeSD&videoId=4385052097001&autoplay=true.

94. As another example, once registered, the public is able to access BD's Learning Academy, which purports to provide various courses relating to the Accused Systems, including a "Gravimetric Setup and Preparation Workflow" job aid and Pyxis IV Prep courses for Pharmacy Users. *See, e.g.*, https://academy.bd.com/en-us/course/VuKX_M6tGXM1/BD-Pyxis-IV-Prep-v2-44-Job-Aids; https://academy.bd.com/en-us/course/vxodRC0vVKo1/Pharmacy-user-BD-Pyxis-IV-Prep-v2-50-course.

95. BD also has contributed and will contribute to the infringement by third parties of one or more claims of the '374 Patent by making, using, offering to sell, selling, and/or importing the Accused Systems in or into the United States, knowing that the Accused Systems are especially made or adapted to infringe the '374 Patent and knowing that the Accused Systems are not a staple of commerce suitable for non-infringing use.

96. For example, the components supplied by BD include specialized medication-compounding workstation hardware and software including a camera, an electronic scale, and associated communication hardware and software designed to receive patient-specific dose orders, retrieve and display associated preparation protocols, take and process images, obtain measurements from a scale, and verify the protocol is being completed appropriately or provide real-time error notifications and hard stops. Each of these components provided by BD is an essential part of the claimed workstation and is configured to operate with the other components (including special-purpose software and hardware components) as an integrated dose preparation system. These components supplied by BD would not have any use absent such communication with a customer-supplied computer.

97. BD has engaged in the foregoing conduct with respect to the patented invention in the United States without authority from Baxter and during the term of the ’374 Patent.

98. At least as a result of the letter that Baxter’s counsel sent to BD’s Chief Counsel for Intellectual Property on March 11, 2020 identifying the ’374 Patent, BD has had knowledge of the ’374 Patent and BD’s infringement thereof. Ex. 1. Nevertheless, BD has continued to make, use, sell, import, and/or offer to sell the Accused Systems in the United States.

99. BD has thus willfully infringed and continues to willfully infringe the ’374 Patent by continuing to make, use, import, offer to sell, and/or sell the Accused Systems in the United States after having knowledge of the ’374 Patent and, on information and belief, knowledge that the Accused Systems infringe one or more of at least Claims 12-14, 16, and 21 of the ’374 Patent.

100. Thus, BD is liable to Baxter in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

101. This case is exceptional under 35 U.S.C. § 285, including due to BD’s willful infringement of the ’374 Patent.

102. As a result of the acts of infringement by BD, Baxter has suffered and/or will continue to suffer substantial damages in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

### (Infringement of the ’803 Patent)

103. Baxter realleges and incorporates by reference the foregoing paragraphs 1 to 102.

104. BD has engaged in the commercial manufacture, use, offer for sale, or sale of the Accused Systems in the United States and/or the importation of the Accused Systems into the United States. Under 35 U.S.C. § 271, any one of these

acts constitute direct and indirect infringement, either literally or under the doctrine of equivalents, of one or more claims of the ’803 Patent.

105. BD infringes the ’803 Patent by making, using, offering to sell, selling, and/or importing the Accused Systems in or into the United States and by actively inducing and contributing to infringement by others, in violation of 35 U.S.C. § 271 (a)-(c) and/or (f). As set forth in the attached non-limiting Claim Chart, BD infringes at least Claims 1 and 12 of the ’803 Patent, either literally or under the doctrine of equivalents. Ex. 10.

106. BD also has induced infringement, and continues to induce infringement, of one or more claims of the ’803 Patent, including Claims 1 and 12. BD knowingly and intentionally induces third parties to infringe the ’803 Patent, including health care providers, by selling or otherwise supplying the Accused Systems with the knowledge and intent that third parties will use the Accused Systems to infringe the ’803 Patent. BD knowingly and intentionally provides third parties with instructions on how to use the Accused Systems in a way that infringes the ’803 Patent. *See* Ex. 10.

107. For example, BD promotes the Accused Systems as providing guided compounding workflows, gravimetric verification, automatic photo documentation, remote pharmacist verification, and real-time dose-preparation error notifications. *See, e.g.*, https://www.bd.com/en-us/products-and-solutions/products/product-page.356891-01#overview; https://www.bd.com/en-us/products-and-solutions/solutions/medication-management-solutions/compounding-workflow-solution.

108. Furthermore, BD’s promotional materials specifically instruct users to employ the Accused Systems to “leverage gravimetric workflows with . . . photo capture, workflow-integrated hard stops and a scale to verify accurate weight.” *See* https://www.bd.com/content/dam/bd-assets/na/medication-management-solutions/documents/pharmacykeeper/pk_gravimetrics_flyer_2024.pdf.

109. BD's public demonstration video also shows the Accused Systems displaying instructions to place medication-preparation objects on the staging region, capturing and displaying images of those objects, displaying weight data from the scale, and directing the operator through subsequent preparation steps. *See* https://players.brightcove.net/pages/v1/index.html?accountId=81909694001&playerId=ByOoMeSD&videoId=4385052097001&autoplay=true.

110. As another example, once registered, the public is able to access BD's Learning Academy, which purports to provide various courses relating to the Accused Systems, including a "Gravimetric Setup and Preparation Workflow" job aid and Pyxis IV Prep courses for Pharmacy Users. *See, e.g.*, https://academy.bd.com/en-us/course/VuKX_M6tGXM1/BD-Pyxis-IV-Prep-v2-44-Job-Aids; https://academy.bd.com/en-us/course/vxodRC0vVKo1/Pharmacy-user-BD-Pyxis-IV-Prep-v2-50-course.

111. BD also has contributed and will contribute to the infringement by third parties of one or more claims of the '803 Patent by making, using, offering to sell, selling, and/or importing the Accused Systems in or into the United States, knowing that the Accused Systems are especially made or adapted to infringe the '803 Patent and knowing that the Accused Systems are not a staple of commerce suitable for non-infringing use.

112. For example, the components supplied by BD include the specialized platform base containing the scale and medication-preparation staging region, the housing, the support member suspending the housing over the staging region, the imaging device, and a light source directed toward the staging region. Each of these components provided by BD is an essential part of the claimed workstation and is configured to operate with the other components (including special-purpose software and hardware components) as an integrated dose preparation system. These components supplied by BD would not have any use absent such communication with a customer-supplied computer.

113. BD has engaged in the foregoing conduct with respect to the patented invention in the United States without authority from Baxter and during the term of the ’803 Patent.

114. On information and belief, at least as a result of the letter that Baxter’s counsel sent to BD’s Chief Counsel for Intellectual Property on March 11, 2020 identifying the ’912 Patent, a parent of the ’803 Patent, BD has had knowledge of the ’803 Patent since at least its issuance date of April 4, 2023 and has remained at a minimum willfully blind to its infringement of the ’803 Patent. Ex. 1. Meanwhile, BD has continued to make, use, sell, import, and/or offer to sell the Accused Systems in the United States.

115. BD has thus willfully infringed and continues to willfully infringe the ’803 Patent by continuing to make, use, import, offer to sell, and/or sell the Accused Systems in the United States after having knowledge of the ’803 Patent and, on information and belief, knowledge that the Accused Systems infringe one or more of at least Claims 1 and 12 of the ’803 Patent.

116. Thus, BD is liable to Baxter in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

117. This case is exceptional under 35 U.S.C. § 285, including due to BD’s willful infringement of the ’803 Patent.

118. As a result of the acts of infringement by BD, Baxter has suffered and/or will continue to suffer substantial damages in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

## (Infringement of the ’757 Patent)

119. Baxter realleges and incorporates by reference the foregoing paragraphs 1 to 118.

120. BD has engaged in the commercial manufacture, use, offer for sale, or sale of the Accused Systems in the United States and/or the importation of the

Accused Systems into the United States. Under 35 U.S.C. § 271, any one of these acts constitute direct and indirect infringement, either literally or under the doctrine of equivalents, of one or more claims of the ’757 Patent.

121. BD infringes the ’757 Patent by making, using, offering to sell, selling, and/or importing the Accused Systems in or into the United States and by actively inducing and contributing to infringement by others, in violation of 35 U.S.C. § 271 (a)-(c) and/or (f). As set forth in the attached non-limiting Claim Chart, BD infringes at least Claims 2 and 12 of the ’757 Patent, either literally or under the doctrine of equivalents. Ex. 11.

122. BD also has induced infringement, and continues to induce infringement, of one or more claims of the ’757 Patent. BD knowingly and intentionally induces third parties to infringe the ’757 Patent, including health care providers, by selling or otherwise supplying the Accused Systems with the knowledge and intent that third parties will use the Accused Systems to infringe the ’757 Patent. BD knowingly and intentionally provides third parties with instructions on how to use the Accused Systems in a way that infringes the ’757 Patent. *See* Ex. 11.

123. For example, BD promotes the Accused Systems as providing guided compounding workflows, gravimetric verification, automatic photo documentation, remote pharmacist verification, and real-time dose-preparation error notifications. *See, e.g.*, https://www.bd.com/en-us/products-and-solutions/products/product-page.356891-01#overview; https://www.bd.com/en-us/products-and-solutions/solutions/medication-management-solutions/compounding-workflow-solution.

124. Furthermore, BD’s promotional materials specifically instruct users to employ the Accused Systems to “leverage gravimetric workflows with . . . photo capture, workflow-integrated hard stops and a scale to verify accurate weight.” *See*

https://www.bd.com/content/dam/bd-assets/na/medication-management-solutions/documents/pharmacykeeper/pk_gravimetrics_flyer_2024.pdf.

125. BD's public demonstration video also shows the Accused Systems displaying operator instructions, capturing images of medication-preparation objects, displaying weight information, and directing the operator through subsequent preparation steps. *See* https://players.brightcove.net/pages/v1/index.html?accountId=81909694001&playerId=ByOoMeSD&videoId=4385052097001&autoplay=true.

126. As another example, once registered, the public is able to access BD's Learning Academy, which purports to provide various courses relating to the Accused Systems, including a "Gravimetric Setup and Preparation Workflow" job aid and Pyxis IV Prep courses for Pharmacy Users. *See, e.g.*, https://academy.bd.com/en-us/course/VuKX_M6tGXM1/BD-Pyxis-IV-Prep-v2-44-Job-Aids; https://academy.bd.com/en-us/course/vxodRC0vVKo1/Pharmacy-user-BD-Pyxis-IV-Prep-v2-50-course.

127. BD also has contributed and will contribute to the infringement by third parties of one or more claims of the '757 Patent by making, using, offering to sell, selling, and/or importing the Accused Systems in or into the United States, knowing that the Accused Systems are especially made or adapted to infringe the '757 Patent and knowing that the Accused Systems are not a staple of commerce suitable for non-infringing use.

128. For example, the components supplied by BD include the specialized platform base containing the scale and medication-preparation staging region, the housing, the support member suspending the housing over the staging region, the imaging device, and a light source directed toward the staging region. Each of these components provided by BD is an essential part of the claimed workstation and is configured to operate with the other components (including special-purpose software and hardware components) as an integrated dose preparation system. These

components supplied by BD would not have any use absent such communication with a customer-supplied computer.

129. BD has engaged in the foregoing conduct with respect to the patented invention in the United States without authority from Baxter and during the term of the ’757 Patent.

130. On information and belief, at least as a result of the letter that Baxter’s counsel sent to BD’s Chief Counsel for Intellectual Property on March 11, 2020 identifying the ’912 Patent, a parent of the ’757 Patent, BD has had knowledge of the ’757 Patent since at least its issuance date of July 23, 2024, and has remained at a minimum willfully blind to its infringement of the ’757 Patent. Ex. 1. Meanwhile, BD has continued to make, use, sell, import, and/or offer to sell the Accused Systems in the United States.

131. BD has thus willfully infringed and continues to willfully infringe the ’757 Patent by continuing to make, use, import, offer to sell, and/or sell the Accused Systems in the United States after having knowledge of the ’757 Patent and, on information and belief, knowledge that the Accused Systems infringe one or more of at least Claims 2 and 12 of the ’757 Patent.

132. Thus, BD is liable to Baxter in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

133. This case is exceptional under 35 U.S.C. § 285, including due to BD’s willful infringement of the ’757 Patent.

134. As a result of the acts of infringement by BD, Baxter has suffered and/or will continue to suffer substantial damages in an amount to be proven at trial.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Baxter hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

WHEREFORE, Baxter requests that the Court:

A. Order, adjudge, and decree that BD has infringed the Asserted Patents;

B. Order, adjudge, and decree that BD's infringement of the Asserted Patents is exceptional under 35 U.S.C. § 285;

C. Order, adjudge, and decree that BD's infringement of the Asserted Patents is and has been willful;

D. Award Baxter damages for patent infringement including prejudgment interest and costs against BD under 35 U.S.C. § 284;

E. Award Baxter up to three times its damages to compensate Baxter under 35 U.S.C. § 284;

F. Award Baxter its reasonable attorneys' fees under 35 U.S.C. § 285; and

G. Award such other and further relief as the Court may deem just, including but not limited to an accounting for acts of infringement made but not otherwise awarded to Baxter.

Dated: August 7, 2026

Respectfully submitted,

By: */s/ Irene Yang*
Irene Yang (CSB No. 245464)
SIDLEY AUSTIN LLP
101 California Street, Suite 3500
San Francisco, California 94111
Telephone: (415) 772-1200
irene.yang@sidley.com

Brooke S. Böll (CSB No. 318372)
(Application for Admission Pending)
SIDLEY AUSTIN LLP
350 South Grand Avenue
Los Angeles, California 90071
Telephone: (213) 896-6000
brooke.boll@sidley.com

Morgan R. Mendicino
(Admission Pro Hac Vice Pending)
SIDLEY AUSTIN LLP
2323 Cedar Springs, Suite 2600
Dallas, Texas 75201
Telephone: (214) 981-3300
mmendicino@sidley.com

*Attorneys for Plaintiff*
*Baxter Corporation Englewood*